LULA LEE, ADMX., v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 18 September, 1918.)

1. Carriers of Passengers — Ejecting Passenger — Helpless Passenger — Drunkenness—Dangerous Place.

Where there is evidence tending to show that a passenger on a railroad train was too drunk to get on without assistance; was moved by the conductor into the smoking compartment of the car; was too drunk to find the ticket he had purchased, and was put off by the conductor, after dark, at a place to which he had paid a cash fare, with abusive words from him, where he was in danger, owing to his condition, from passing trains, and one of them ran over and killed him, it is sufficient to be submitted to the jury upon the actionable negligence of the conductor in thus ejecting a helpless passenger at a dangerous place; and testimony of ejaculations of passengers, in the conductor's presence and hearing, as to the passenger's helplessness upon the track, and his danger from passing trains, is competent upon the question of the knowledge of the conductor at the time.

2. Appeal and Error—Carriers of Passengers—Ejecting Passenger—Negligence—Evidence—Trials.

Where judgment has been rendered against a railroad company upon a trial directed solely to the question of the actionable negligence of the conductor in ejecting the plaintiff's intestate, a passenger upon his train, at a dangerous place while in a drunken and helpless condition, the result will not be affected, on appeal, by the lack of evidence of negligence of the employees on a following train of the defendant, which struck and killed him.

APPEAL by defendant from *Daniels, J.,* at April Term, 1918, of EDGECOMBE.

This is an action to recover damages for the wrongful death of one Lee, caused, as the plaintiff alleges, by the negligence of the defendant in the expulsion of Lee from the train of the defendant while intoxicated and in a helpless condition, and at a place where he was in danger of being run over by passing trains.

The evidence tends to prove that the deceased was at Petersburg, Va., on 9 January, 1916, the last day intoxicating liquors were sold in Virginia; that deceased bought a ticket at Petersburg for Battleboro, in North Carolina, and boarded the train of the defendant as a passenger.

Frank Grear, a witness for the plaintiff, testified as follows: "I live at Rocky Mount; went to Hopewell, Va. On my return trip I was at Petersburg and saw Frank Lee in station at Petersburg. I knew him; recognized and spoke to him. He was under influence of liquor. I left him sitting there until time for train to go to Rocky Mount. I asked him if he was going there. He said yes. Told him that he better get his ticket; helped him to the window. He got his ticket and put it in his pocket. When train came I took him out of the sitting-room and helped

him up on the train. When the train came, helped push him up. Left him in the passway of the train; went to the smoker. When left Washington Street Station, conductor came for tickets; saw Lee fumbling about. I stood up and looked at him. He got up, being so full of whiskey, was fumbling all round his pocket for his ticket. Conductor told him to have his ticket when he came back; was not long before conductor came back with him in the smoker; saw Lee give him $1. Conductor told him that would take him to Emporia, and when he got there, would have to have his ticket. He could not walk by himself. Conductor had him by each shoulder when he came in the smoker with him. He staggered some; would fall against the side and catch the seat. Suppose conductor saw his condition. He brought him in the smoker. After Lee paid the $1, conductor put him down in the smoker; told him not to go into the other car. There had been some complaint about his falling over other passengers. Frank got quiet and seemed to fall asleep. When the train got to Emporia, stopped where it usually does. Lee did not get up; seemed he was asleep, leaning over, with his head on his arms; was about 7 o'clock, January; was dark when the train started off; was not long before the conductor walked in and said to Lee, 'Give me your ticket.' Train had gone, I suppose, about a mile from station, when conductor caught hold of Lee and asked for his ticket. He rolled his eyes up at him and said, 'What to hell do you want?' The conductor said, 'You doggone son of a bitch, you have worried me enough; I am going to put you off the train.' He caught hold of him one one side, and Mr. Pittman on the other, and walked with him to the platform and put him on the ground. I crossed over and went to the window, on the side they put him off, and looked at him. The conductor had pulled the train off. Mr. Pittman had left him. He was right near the train. Conductor pulled the train. He and Mr. Pittman could both have seen him staggering. Mr. Pittman is railroad detective. I said something. The conductor was present. I don't know whether he heard me or not. I wouldn't swear that Mr. Pittman heard what I said. He was in the smoker at the time. He is a railroad detective. I said, 'Well, if this train don't kill him, the next one will, because he is right between the train.' Everybody in the smoker could have heard it. Mr. Pittman was about 2 yards from me. I was speaking in an ordinary tone of voice. Lee could not have gotten off train by himself."

Another witness testified: "Lee walked bad. Conductor pulled cord Seem train hardly stopped when they put him off." Here witness said: "I heard some one say—don't know who said it—the conductor and detective heard what was said—some one said, 'Look yonder; he is scrambling on the ground, trying to catch the train.' I didn't see him; was on opposite side of train. Conductor knew he was drunk. He was not

bothering anybody when they put him off. He was worse when they put him off than when he got on the train at Petersburg."

It was also in evidence that another train of the defendant passed the place where he was ejected within 30 minutes, moving at a high rate of speed, and that there were signs on the ground and roadbed indicating that the deceased was struck about a car-length from the place where he was put off the train.

There was evidence on behalf of the defendant contradicting practically all of the evidence offered by the plaintiff.

At the conclusion of the evidence there was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

There are other exceptions, which will be adverted to in the opinion.

The jury returned a verdict in favor of the plaintiff, and judgment was entered thereon, from which the defendant appealed.

*Fountain & Fountain and G. M. T. Fountain & Son for plaintiff.*
*F. S. Spruill and John L. Bridgers for defendant.*

ALLEN, J. It is contended in the brief of the defendant that the motion for judgment of nonsuit ought to have been sustained, because there is no evidence that the intestate of the plaintiff was down on the track in an apparently helpless condition, or, if in this position, that he could have been discovered by the employees of the defendant on the second train in time to avoid the killing, by the exercise of ordinary care but it appears from the record that the action was not tried on this theory, and, on the contrary, that liability was imposed on the defendant and a recovery permitted under the principle announced in *Roseman v. R. R.,* 112 N. C., 716, where it is held that if the power given by law to eject a passenger, in proper cases, "is exercised in such a manner as to willfully and wantonly expose the ejected person to danger of life or limb, the company is still liable for injury or death resulting from the expulsion," and that "Cases falling within this last exception to the general rule, and not intended to be included under the statute, arise where the persons ejected are manifestly too infirm to travel or too much intoxicated to be trusted to find the way to the nearest house or station. 3 Wood R. R. Law, sec. 362; 2 Sherman & Red. Neg., sec. 493; *R. R. v. Right,* 34 Am. Rep., 277."

That this is the ground upon which damages have been awarded is clearly shown by the charge, and it is not contended there is no evidence to support it. His Honor instructed the jury that "No man had a right to ride upon a common carrier without either purchasing a ticket or tendering his fare; and even though the passenger has a ticket and fails to produce it, either from his own carelessness or drunkenness, that doesn't

relieve the conductor of his right and duty to put him off if he doesn't tender the ticket or the fare. So that, ordinarily, if the passenger, as in this case, does not, upon the demand of the conductor, produce a ticket or pay his fare, and is put off the train, he would have no cause of complaint, because in that event the conductor would only be performing his duty to the railroad company. But this has the qualifications that, as a general rule of law—and that is insisted upon as the ground of liability in this case—if the passenger be in such a condition, either from drink or from disease, that the conductor, in making his observations incident to the performance of his duties in going through the train and taking up tickets and caring for his passengers, had reason to believe that the passenger was in such condition, mental or physical, as that being put off the train he would be incapable of providing for his own safety, and while in that condition he was put off, and as the proximate result thereof he was run over and killed by a train of the defendant, then there would be actionable negligence. I may say, further, gentlemen, that in the view I take of this case there was no negligence on the part of the defendant's conductor, either upon the testimony of the plaintiff or the defendant, as to the place at which the plaintiff's intestate, Frank Lee, was put off the train. . . . So that, your real inquiry, as I understand the contentions of the plaintiff and defendant, is whether it was a breach of duty on the part of the defendant in putting him off while he was in such a condition that he was incapable of caring for his own safety. If he was in this sort of condition, and that could have been reasonably perceived by the conductor in performing his duties to the company and to the passengers, then he ought to have been carried to the next station and turned over to the authorities there to be taken care of, and ought not to have been put off the train in a condition where he was unable from drunkenness to protect himself from the dangers of the moving train. . . . And I charge you upon this first issue that if the evidence satisfies you by its greater weight, the burden being upon the plaintiff, that at the time the passenger, Frank Lee, was put off the train he was incapable from drunkenness of caring for himself and providing for his own safety, and the conductor, in the discharge of his duty as such conductor, could reasonably have perceived from all the surrounding circumstances that he was in that condition, and put him off, knowing or having reason to believe that he was in that condition, and as a proximate result thereof he was run over and killed, then you would answer this first issue 'Yes.' Unless you are so satisfied, you would answer it 'No.' "

We are therefore of opinion the motion for judgment of nonsuit was properly overruled.

The statement of a witness, "If this train don't kill him, the next will," and of another, "He is scrambling on the ground, trying to catch the train," both made in the presence of the conductor, according to the evidence of the plaintiff, were competent on the question of knowledge of the helpless condition of the intestate.

The other exceptions require no discussion further than to say that the charge is full, clear, and accurate, and fair to both parties, and we find nothing justifying the criticism that it unduly emphasizes the contention of either party.

No error.